```
 1  Serano-Andrei Dumitrascu
    c/o Mami Chelo Foundation
 2  70 W 36th St. Ste 12A
 3  New York, New York 10018
    (Phone number)
 4  Plaintiff in Pro Se
 5
 6
 7
 8
```

FILED
Mar 04 2025
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ YC    DEPUTY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Serano-Andrei Dumitrascu,

    Plaintiff,

vs.

CoreCivic of Tennessee, LLC,

    Defendant.

Case No.: **'25CV0513 JES  MSB**

**COMPLAINT FOR DAMAGES**

**DEMAND OF JURY TRIAL**

## INTRODUCTION

1. This is a complaint seeking declaratory relief and damages for the wrongful death of Plaintiff's father, 50 year-old Cristian Dumitrascu (Cristian), who died while in U.S. Immigration and Customs Enforcement (ICE) custody at the Otay Mesa Detention Center (OMDC), owned and operated by Defendant CoreCivic of Tennessee, LLC (CoreCivic).

2. Through this action, Plaintiff seeks compensatory and punitive

1

Wrongful Death Complaint

damages arising out of the preventable death of his father.

3. Plaintiff also seeks a declaration that CoreCivic violated its contract with ICE and the federal Performance-Based National Detention Standards (PBNDS) incorporated therein, as mandated by federal appropriations law.

**Parties**

4. Plaintiff Serano-Andrei Dumitrascu is an adult resident of Romania and the eldest son of Cristian Dumitrascu.

5. Defendant CoreCivic owns and operates the Otay Mesa Detention Center in San Diego County, California. Defendant is headquartered in Brentwood, Tennessee and incorporated in Maryland.

**Jurisdiction and Venue**

6. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. 1331 (federal question) because, as a federal ICE detention contractor, CoreCivic was contractually bound to follow standards set forth by the PBNDS, which have the force and effect of federal law pursuant to federal appropriations provisions.

7. Alternatively, this Court has diversity jurisdiction because the amount in controversy exceeds $75,000 and the parties are citizens of Tennessee (Defendant) and Romania (Plaintiff).

8. Venue is proper in this District because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred at OMDC in San Diego

2

Wrongful Death Complaint

County.

## Factual Allegations

9. On or about March 1, 2023[1], ICE transferred Cristian from a temporary holding facility following his arrest by U.S. Customs and Border Protection (CBP) for a civil immigration violation on February 22, 2023, to OMDC.

10. At all times relevant to this Complaint, Cristian was in civil immigration detention; he had not been charged with or convicted of any crime.

11. On March 1, 2023, a registered nurse (RN) -- on information and belief, Martha Terry -- employed by Defendant CoreCivic documented mildly elevated blood pressure of 135/74 and a slightly low heart rate of 59 beats per minute while completing his intake screening.[2]

12. The intake screening noted Cristian weighed 249 lbs and spoke Romanian, indicating "Yes" to the "Communication Barrier?" prompt in his CoreCivic electronic medical record.

13. On March 3, 2023, CoreCivic-employed or contracted Chrisitana Igbo, Advanced Registered Nurse Practitioner (ARNP) conducted an "initial appraisal of Cristian that indicated incorrectly he was a "50 yo English speaking male."

---

[1] See U.S. Immigration and Customs Enforcement Detainee Death Report: DUMITRASCU, Cristian, (ICE DDR) available at https://www.ice.gov/doclib/foia/reports/ddrCristianDumitrascu.pdf last accessed Mar. 4, 2025.
[2] ICE DDR at 1.

3
Wrongful Death Complaint

14. Dr. Rae Boganey, the physician CoreCivic placed in charge of reviewing Cristian's initial assessment, did not conduct the review of ARNP Igbo's Initial Assessment until May 1, 2023, according to CoreCivic's electronic medical records. Dr. Boganey's review occurred nearly two months after Cristian passed away.

15. Shortly after midnight on March 5, 2023, immigrants detained with Cristian at OMDC noticed him struggling to breathing while lying on his top bunk.

16. At 12:03 a.m., the detained immigrants were able to get the attention of a CoreCivic guard and ask for help.

17. At this time, he was alive, breathing, and struggling to catch his breath.

18. By 1:02 a.m., a doctor a Sharps Grossmont hospital pronounced Cristian dead telephonically after speaking with emergency responders who attempted to care for him after arriving at the facility.

19. A series of grossly negligent acts by CoreCivic personnel transpired in the hour between the time CoreCivic was alerted to Cristian's medical emergency and the time he was pronounced dead.

20. CoreCivic staff did not initiate cardiopulmonary resuscitation (CPR) until six minutes after discovering he was pulseless.

21. CoreCivic delayed calling 911 for 9 minutes after discovering he was pulseless.

4
Wrongful Death Complaint

22. CoreCivic staff did not bring a gurney or automated external defibrillator (AED) to the medical emergency, resulting in a delay of 16 minutes after discovering Cristian was pulseless.

23. CoreCivic staff inexplicably moved Cristian from his dorm to the facility's medical area, and then again to the vicinity of a sally port where emergency medical responders arrived, without administering chest compressions.

24. After Cristian's death, CoreCivic personnel altered the scene in his dorm – searching for and confiscating unidentified items and cleaning up liquids on the floor prior to the arrival of law enforcement personnel from the San Diego Medical Examiner's Office.

25. CoreCivic delayed calling the San Diego County Sheriff to report Cristian's death for nearly two hours, until 3:25 a.m.

26. Shortly after 4 a.m., CoreCivic staff falsely claimed to Sheriff's Department personnel that because Cristian died inside a federal immigration detention center, the Federal Bureau of Investigation (FBI) would be responsible for investigating his death, according to sheriff's department records.

27. As a result of CoreCivic's false claims, the San Diego County Sheriff and Medical Examiner did not perform a complete and thorough investigation into Cristian's death.

28. According to the ICE Health Services Corps (IHSC) Mortality Review Committee (MRC) that reviewed records of Cristian's care prior to his

death, CoreCivic personnel breached multiple standards of care and PBNDS requirements.

29. The IHSC MRC "determined the care OMDC provided [Cristian] deviated beyond safe limits of practice."

30. First, the IHSC MRC concluded "OMDC staff deviated from CoreCivic Emergency Response policy."

31. Second, the IHSC MRC concluded "OMDC staff delayed CPR delivery during the emergency response."

32. Third, the IHSC MRC concluded "OMDC staff delayed AED use during the emergency response."

33. Fourth, the IHSC MRC concluded "OMDC staff did not secure the scene."

34. Fifth, the IHSC MRC concluded "OMDC's health assessment notes lack defined parameters for areas assessed."

35. Sixth, the IHSC MRC concluded "OMDC's staff lack the proper CBP technique, application, and skill."

36. Seventh, the IHSC MRC concluded "OMDC staff made a poor decision during the emergency response by moving [Cristian] from the scene instead of remaining in place and prioritizing chest compression delivery."

37. Based on these conclusions, ICE's indicates CoreCivic did not comply with PBNDS 2011 rev. 2016 Part 4.3, Medical Care, section T. *Emergency*

*Medical Services and First Aid*; PBNDS 2011 rev. 2016 Part 1.1 Emergency Plans; section C. *Contingency Plan Development*; National Commission on Correctional Health Care (NCCHC): Standards for Health Services in Jails, 2018: J-C-04, *Health Training for Correctional Officers*; NCCHC 2018: J-D-07, *Emergency Services Response Plan*; NCCHC 2018: J-D-03, *Clinical Space, Equipment, and Supplies*; and five separate contractually mandated CoreCivic policies governing medical emergency response.

38. Despite these findings, which were obtained through the Freedom of Information Act (FOIA) in July 2024, ICE's announcement of Cristian's death falsely claims "*All* people in ICE custody receive . . . 24-hour emergency medical care. At no time during detention is a detained noncitizen denied emergent care."[3]

39. Indeed, no ICE or CoreCivic representative ever communicated the conclusions of the IHSC MRC to Plaintiff, despite multiple requests for his complete medical records and records of his death.

40. The San Diego County Medical Examiner concluded Cristian died of hypertensive and atherosclerotic cardiovascular disease, with obesity listed as contributing, and the manner of death as natural.

41. However, because of CoreCivic's successful effort to block independent investigation of the death the forensic pathologists who reviewed

---

[3] ICE Office of Public Affairs, "Romanian national passes away in ICE custody," Mar. 6, 2023, available at https://www.ice.gov/news/releases/romanian-national-passes-away-ice-custody last accessed Mar. 4, 2025.

7

Wrongful Death Complaint

Cristian's case were falsely informed by the investigator that "[u]pon the guard's arrival [at Cristian's bedside], aggressive cardiopulmonary resuscitation was started." This, in fact, did not occur.

42. The Medical Examiner did not run toxicology screens for common forms of prescription drugs that have been misused within ICE facilities where deaths have occurred.

43. Cristian's autopsy found several injuries on his body, including on his right lower abdomen, left anterior upper arm, and mid anterior leg, in addition to rib fractures likely associated with CPR.

44. At least seven witnesses who were detained in Cristian's room and the surrounding areas of his dorm claim that when CoreCivic medical and security personnel attempted to remove him from the top bunk and transfer him onto the gurney, they accidentally dropped him on the floor.

45. At that time, he stopped breathing altogether, and a liquid began leaking onto the floor, according to eyewitnesses.

46. Hours later, CoreCivic shut off the phone lines inside the dorm where Cristian died.

47. All of the eyewitnesses who provided statements regarding Cristian's death in the days that immediately followed it were abruptly transferred out of OMDC or deported.

48. On information and belief, CoreCivic worked with ICE to identify the

eyewitnesses who may have information challenging the official narrative and render them inaccessible or intimidate them into remaining silent.

## CLAIMS FOR RELIEF

### Count One: Wrongful Death

49. Plaintiff restates the allegations of the foregoing paragraphs as though set forth fully herein.

50. CoreCivic had a duty to ensure its personnel at OMDC provided Cristian a timely, competent, and medically adequate emergency response.

51. CoreCivic breached this duty as described above.

52. As a result of CoreCivic's breach of its duty of care, Cristian's opportunity to survive was lost—particularly, through the denial of prompt CPR, AED, 911, and other mandated emergency care activities.

53. Plaintiff has suffered damages as a result of CoreCivic's breaches of its duty of care, and the wrongful death of his father.

54. Consequently, Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial by jury.

55. Plaintiff also seeks all fees and costs permitted by the California General Assembly under AB 3228 (The Accountability in Detention Act) (Sept. 27, 2020), based on CoreCivic's violation of its standards of care and confinement.

## PRAYER FOR RELIEF

Wherefore, in light of the foregoing, Plaintiff seeks the following relief from this

Court:

56. Accept jurisdiction over this action;

57. Declare, pursuant to 28 USC 2201, that CoreCivic breached its duty of care to Cristian, violating the PBNDS 2011, rev. 2016, and associated contractual obligations;

58. Award Plaintiff compensatory and punitive damages in an amount to be determined by a jury at trial;

59. Award Plaintiff all allowable costs and fees permitted by AB 3228;

60. Award Plaintiff all other relief that is necessary, just, and proper.

Dated March 4, 2025

Signature: _____

By: **Dumitrascu Serano Andrei**

Wrongful Death Complaint